Fiiost, J.
delivered the opinion of the Court.
In the case of the State v. the Commissioners of New Town Cut, 2 Spear, 402, it was decided that the Act of 1825, reducing all Acts relating to the Commissioners of Roads, into one Act, applies exclusively to those bodies which in the old Acts are called Commissioners oí Roads, *562 prívale paths', bficiges <fee, and in the later Acts designated as Commissioners of roads, and has no application to the special boards of Commissioners that have charge of the various cuts, which form part of the inland navigation of the maratime parts of the State, and that these special jurisdictions remain subject to the provisions of the Act of 1788, which is a general law, applicable, except as modified by the Act of 1725 and other subsequent acts, to all the boards of Commissioners, whether general or special. The Act of 1825', which reduces the jurisdiction of Commissioners of floads to twenty dollars, does not therefore extend to Commissioners of Cuts, nor abridge the powers and authority granted to them by the Act of 1788. By this Act the general as well as the special Beards of Commissioners had jurisdiction to an unlimited amount to determine cases of default in the performance of road duty, and to collect the fines and ' forfeitures they might impose, by warrant of distress, under the hands of any three of them. The fine for neglect or refusal to make a return of the slaves, liable to road duty, was, by the Act of 1788, three pounds for each slave neglected or refused to be returned. The Act of 1795 (9 Stat. 368,) reduces this fine to four dollars for each slave. The sum of. tivo hundred and thirty-one dollars and forty-two qents, directed to be levied by one of the executions, was assessed af the rate of three pounds. It should have been assessed at the rate of four dollars, in conformity to the Act of 1795.
It has been contended, that the authority of the Commissioners to collect, by execution, the fines imposed on the. defendant, for his neglect to make a return of his slaves, and to,’ send them to work as required, is not derived from the Act df' ¿?883 buf should be referred to the Acts of 1738 and 1741.
It is manifest, however, on reference to these Acts, that they do not affect the power of the Commissioners to issue the executions in this case. The Act of 1738, reciting the inconvenience experienced from boats of too great draft being permitted to enter the Cuts, whereby the navigation was frequently qjDstructed, directs the Commissioners of New Cut, Watt’s, éujnnd, #apppoCut to have them opened and cleaned to a *563 certain width and depth, and establishes many regulations for the navigation of them, which impose duties on the Commissioners and the owners of boats, and the persons navigating them; and for the neglect of these duties, certain fines are imposed. It is provided that the fines, which shall accrue under the Act, exceeding twenty pounds, current money, shall be recovered by action in a Court of Record. The Act of 1741 prescribes the duties of white persons liable to road duty, and imposes fines for their default or improper conduct, which, if above twenty pounds currency, shall be recovered in a Court of Record. In neither of these Acts is any mention made of defaults of making returns or sending slaves to work, but they are left subject to the provisions of the Act of 1788, unaffected by any thing contained in those Acts.
It is objected that the jurisdiction granted to the Commissioners of Roads and Cuts, by the Act of 1788, is inconsistent with the second section of the ninth article of the Constitution of this State, which declares that “no man shall be taken, imprisoned or disseized of his freehold,” “or depiived of his life, liberty or property, but by the judgment of his peers, or the law of the land,” and also with the sixth section of the same article, which provides that “the trial by jury, as heretofore used in this State, shall be forever inviolably preservedand that it is also prohibited by the seventh ■article of the amendments of the Constitution of the United ¡States, which provides that “in suits at common law, when the value in controversy shall exceed twenty dollars, the trial by jury shall be preserved; and no fact tried by a jury shall be otherwise re-examined in any Court of the United .States, than according to the rules of the common law.”
From the earliest history of the Colony, Commissioners of sthe Roads and Cuts had jurisdiction to impose and collect, -by execution, assessments made for the construction and repair of bridges, and the fines and forfeitures incurred, by any default in the performance of road duty, by white persons .liable thereto, and by the owners of slaves, in not sending them to work when required; and other penalties enacted to enforce the performance of the duties imposed on persons to whom any charge was given about the making and repairing the roads and cuts. Instances of their authority, in all .these particulars, are to be found in the Act of 1705, the first to be found in the statute book on the subject. — 9 Stat. 3. .By the Act of 1721, reducing all former Acts into one, the ¿same powers and authority are granted to the Commission/ers of Roads, and to the Commissioners of several Cuts, of which New Town Cut was one. By the Acts of 1788 and *564 1785, fines were enacted for neglect to make returns, and to send slaves to work; and the Commissioners were empowered to hear and determine cases of default, and to levy, by execution, under the hands of three of them, the amount they should adjudge against the defaulter. They exercised this jurisdiction when the Constitution was adopted.' — -in 1790. The sections relied on to abridge or divest it have always received such a construction as not to interfere with those tribunals which, at the time of the adoption of the Constitution, proceeded to judgment without the use of a jury — as Courts Martial, the Court of Ordinary, and the Court of Equity.
This construction has received judicial confirmation. In White v. Kendrick, 1 Brev. 471, the question was, whether the Act of 1801, extending the jurisdiction of Magistrates to thirty dollars, was constitutional. It was held that the sections' under consideration established an epoch from which legislative innovation on the trial by jury should cease; and the Act was decided to be unconstitutional, on the ground that trial by jury was to be preserved “as heretofore used,” and in no instance, at the time the Constitution was adopted, had justices of the peace ever exercised jurisdiction as far as thirty dollars. In 1790, by the Act of 1788, justices, in those parts of the State in which County Courts were established, had jurisdiction to five pounds sterling; in all other parts, to twenty pounds currency, under the Act of 1747.' — P. L. 213. In 1799, (7 Slat. 296,) it was fixed throughout the State at twenty dollars, in matters of contract. In 1806, a justice in one of the Counties gave judgment for an amount exceeding twenty dollars; and in the case of Collier v. Rogers, 2 Brev. 41, a motion was made to arrest the judgment. It was decided that the justice exceeded his jurisdiction, which was limited to twenty dollars. White v. Kendrick was affirmed, and the constitutional objection, presented by the Act of 1747, was obviated by the circumstance that in the Counties justices had jurisdiction to five pounds sterling at the time the Constitution was adopted. These cases are supported by that of Coleman v. Maxcy, 1 McMull. 503. The Act of 1836 declares that any person who shall, within ten miles of the South Carolina College, keep a house for gaming, a faro bank or other device for gaming, shall be proceeded against, as a vagrant. fThe constitutionality of this Act, and the jurisdiction of the" justice, were supported, on the ground that justices had jurisdiction of vagrancy at the time the Constitution was adopted; and that the terms used in the sections relied on in this case must embrace the common law, as then adopted here, and the statutes of Great Britain and of this State, made *565 of force and in operation at that time, and that these sections do therefore recognize and allow the proceedings of the various Courts of established jurisdiction, known to the law, which had been sanctioned by long use, and, as it were, by a popular adoption of them/] The construction of the Constitution, which these cases have established, conclusively maintains the jurisdiction of the Commissioners to issue the executions against the defendant.
But the validity of the powers and authority conferred on the Commissioners of Roads and Cuts, by the Act of 1788 and other Acts in force at the adoption of the Constitution, does not need the aid of these cases. All those Acts are expressly protected against any constructive abrogation, by the seventh article, which provides that “All laws of force in this State, at the passing of this Constitution, shall so continue, until altered or repealed by the Legislature, except when they are temporary,' in which case they shall expire at the times respectively limited for their duration, if not continued by Act of the Legislature.”
The circumstance that the limitation of the jurisdiction of justices, imposed by the Act of 1799, coincides with the amount in controversy, in the trial of which, by the seventh article of the amendments of the Constitution of the United States, “the trial by jury shall be preserved,” may have created an impression that, in prescribing the sum of twenty dollars, the Legislature recognized the obligation of that article. But it cannot admit of argument that the article referred to relates only to the Supreme Court and such inferior Courts as Congress may, by the Constitution, from time to time ordain and establish. (See 3 Story’s Com. on the Constitution, 633, and the 83d number of the Federalist, inserted in a note.)
The order of the Circuit Court, discharging the rule as to the execution for fifty-four dollars, is reversed, but it is affirmed as to the execution for $231 40, unless the Commissioners remit the excess of the fine beyond four dollars for each slave included in the default; but the Sheriff has leave further to show cause, and for this purpose the case is remanded to the Circuit Court.
O’Neall, J. Evans, J. Wardlaw, J. Dunk in, Ch. Caldwell, Ch. and Dargan, Ch. concurred.
Withers, J. and Johnston, Ch. absent, from indisposition.